# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER CASTILLO,<br><br>            Plaintiff,<br><br>      v.<br><br>UNITED STATES INTERNAL<br>REVENUE SERVICE,<br><br>            Defendant.<br>_____/ | Case No.  1:13-cv-00517-SKO<br><br>**ORDER ON DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT**<br><br>(Doc. 43) |

## I.  INTRODUCTION

Plaintiff Heather Castillo ("Plaintiff) brings this action against her employer, the United States Internal Revenue Service ("Defendant"), alleging violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*  On December 21, 2016, Defendant filed a motion for summary judgment. (Doc. 43.)  On January 12, 2016, Plaintiff filed her opposition, and on January 20, 2-16, Defendant filed its reply.  (Docs. 44; 45.)  Having reviewed the parties' papers and all supporting material[1], the matter is deemed suitable for decision without oral argument pursuant to Local Rule 230(g) and the hearing is vacated.

---

[1] This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. Although this Court has also reviewed, considered and applied the evidence it deemed admissible and material, it does not rule on objections in a summary judgment context, unless otherwise noted.

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED and the case is DISMISSED.

## II.     BACKGROUND

### A.    Factual Background[2]

#### 1.    Plaintiff's Training History

Plaintiff is employed by Defendant as a Data Processor at Defendant's "Butler Campus" in Fresno, California. (Doc. 43-3, p. 1 (Joint Statement of Undisputed Facts ("JSUF")).) Since she began working for Defendant in 2002, Plaintiff has undergone training on various subjects. (JSUF, p. 1.) Completion of employee training is recorded in the employee's "Learning History" in a database called the "Enterprise Learning Management System." (JSUF, p. 1.) On April 1, 2010, Plaintiff completed Briefing 17900 (Rev. 9/10A), titled the "No FEAR Act Briefing." (JSUF, p. 1.) This briefing included instruction on employees' rights and remedies under the Rehabilitation Act. (Doc. 43-2 (Defendant's Statement of Undisputed Facts ("DSUF")), p. 1.) As part of that training, Plaintiff was advised that

> To be considered as having a disability for purposes of employment discrimination a person must have a physical or mental impairment that substantially limits a major life activity.
>
> Some examples of major life activities are:
>
> - Breathing
> - Walking
> - Seeing
> - Hearing
> - Performing manual tasks, etc.
>
> . . . A temporary or short-term illness is not a disability as defined by the [Rehabilitation Act and Americans with Disabilities Act].

---

[2] The Factual Background is taken from the Joint Statement of Undisputed Facts, Defendant's Statement of Undisputed Facts, and Plaintiff's deposition testimony, attached as an exhibit to Plaintiff's declaration in support of her opposition to Defendant's motion for summary judgment.

The Court notes that Plaintiff timely filed opposition to Defendant's motion. However, Plaintiff's opposition does not comply with Local Rule 260(b),which requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. The opposing party is also required to cite evidence in support of each denial. Given the absence of the required admissions and denials, the Court has reviewed Plaintiff's arguments and evidence in an effort to discern whether Plaintiff denies any fact asserted in Defendant's statement of undisputed facts and, if so, what evidence Plaintiff has offered that may demonstrate the existence of a disputed issue of material fact. *See Easterly v. Geren*, No. CIV S-07-1259-JAM-DAD, 2010 WL 1006494, at *4 (E.D. Cal. Mar. 17, 2010).

(Doc. 43-4 (Declaration of Christopher de Wolfe), Exh. A, p. 10.) Plaintiff was also advised that

> If you want to file an [Equal Employment Opportunity ("EEO")] complaint, there are <u>specific steps</u> to follow and certain time restrictions. What is critical is that you must contact an EEO counselor within 45 days of the allegedly discriminatory event, or in the case of a personnel action within 45 calendar days of the effective date of the action, if you wish to pursue a complaint.

(de Wolfe Decl., Exh. A, p. 16.)

On April 5, 2012, Plaintiff again completed Briefing 17900 (Rev. 11), titled the "No FEAR Act Briefing." (JSUF, p. 2.) This briefing also covered employees' rights and remedies under the Rehabilitation Act. (DSUF, p. 2.) As part of that training, Plaintiff was advised that

- To be considered **as having a disability for purposes of employment discrimination** a person must have **a physical or mental impairment that substantially limits a major life activity or bodily function**.
- Some examples include:
    - Walking
    - Breathing
    - Seeing
    - Hearing
    - Normal cell growth
    - Performing manual tasks, etc.

(de Wolfe Decl., Exh. B, p. 11.) Plaintiff was also advised that

> **If you want to file an EEO complaint you <u>must contact an EEO counselor within 45 calendar days of the allegedly discriminatory event, or in the case of a personnel action within 45 calendar days of the effective date of the action.</u>**

(de Wolfe Decl., Exh. B, p. 18.)

**2.   Plaintiff's History of Requests for Accommodation**

Plaintiff tripped and injured her right ankle on April 29, 2011. (JSUF, p. 2.) As a result of the injury to her ankle, she was absent from work from April 29 until May 12, 2011, and from May 13 until June 16, 2011. (JSUF, p. 2.) Plaintiff turned in four separate "CA-20 forms," filled out by her physicians to detail her injuries and any work restrictions imposed by those injuries, to various supervisors between 2011 and 2012. (Doc. 44-1 (Deposition of Plaintiff Heather Castillo ("Pl. Depo.")), 95:25-96:3.) Plaintiff required the use of crutches for "a couple of weeks" after initially injuring her right ankle. (Pl. Depo., 50:1-3.) The first time Plaintiff returned to work on

April 30, 2011, the day after injuring her ankle, she only worked one day before going to the emergency room because her ankle had become "swollen" and "purple." (Pl. Depo., 26:22-27:7.) Plaintiff returned to work after two weeks, and required a "walking cast" for "several weeks." (Pl. Depo., 50:4-6.)[3]

Despite that Plaintiff's Amended Complaint alleges that upon returning to work on May 12, 2011, Plaintiff requested and was denied the use of a wheel chair (Doc. 28 (Amended Complaint), ¶¶ 21-22), Plaintiff testified that she requested the use of a wheelchair on April 30, 2011, the day after she fell and initially injured her right ankle (Pl. Depo., 50:19-51:9). Plaintiff's manager Nina Roy asked a guard for use of a wheelchair so that Plaintiff "wouldn't have to walk as far to get to [her] workstation," but the guard "said they're not allowed to [authorize use of a wheelchair because] [i]t's for emergencies only." (Pl. Depo., 51:10-52:3.) Plaintiff testified that she never requested to use a wheelchair again. (Pl. Depo., 52:8-11.)

Plaintiff's Amended Complaint alleges that upon returning to work on June 16, 2011, she was denied ongoing requests for a work space where she could elevate her leg. (Am. Compl., ¶¶ 23-26.) Plaintiff, however, testified that she "d[id]n't know where they got that from" because her manager "didn't do that" and "wouldn't have denied something like that" (Pl. Depo., 55:17-56:1). Plaintiff clarified that on April 30, 2011, the day after she injured her right ankle, she had asked her manager whether there were any desks "without a base," and Ms. Roy responded that she didn't believe there were any. (Pl. Depo., 56:2-14; 59:19-60:12.) Plaintiff also testified that she "had asked [Ms. Roy] for something to elevate [her] foot on." (Pl. Depo., 52:12-25). Plaintiff testified that Ms. Roy suggested Plaintiff "sit sideways and put [her] foot on the chair next to [her]," putting Plaintiff in a position where she would be unable to type. (Pl. Depo., 52:24-53:7.) Following Plaintiff's rejection of that option, Ms. Roy told her "[she] should have stayed home." (Pl. Depo., 53:8-10.) Plaintiff then suggested that she could elevate her foot on a box and Ms. Roy responded that she "d[id]n't know where [she] could get one." (Pl. Depo., 53:11-19.) Plaintiff

---

[3] Between 2011 and 2014, Plaintiff made multiple requests for accommodation to her employer arising from injuries to her right ankle and bilateral knees, a benign cell growth below her left breast, and sequential pulmonary embolisms. Only those requests that Plaintiff has alleged were not properly addressed immediately following her right ankle injury on April 29, 2014, will be described in the factual summary.

therefore asked the "custodian" "Mike" to procure her a box and he found one for her to use. (Pl. Depo., 54:1-4.) Plaintiff continues to use that same printer box at her work station to keep her foot elevated at work. (Pl. Depo., 54:23-25.) Plaintiff testified that she has not been instructed by any physician to keep her foot elevated at all times; rather, Plaintiff's physician has advised her that she must elevate her foot when it "swells." (Pl. Depo., 55:3-10.)

Plaintiff finally testified that her request "that she be provided assistance in retrieving the batches of paperwork she needed to complete her job duties" had been denied by her manager, Ms. Roy. (Pl. Depo., 56:21-57:2; *see also id.* at 58:15-59:11 (clarifying that contrary to the allegations of the Amended Complaint, she requested assistance in retrieving the batches of paperwork when she initially returned to work on April 30, 2011).) Plaintiff testified that Ms. Roy replied "[']I don't know how I can do that[']" and opined, "Again, it's just a matter of ignorance. It's not that she was being malicious or vicious or not trying to accommodate. She just didn't know how to accommodate. There is a procedure that you go through for that." (Pl. Depo., 57:14-19.) Because Plaintiff had difficulty carrying the batches of paperwork while using crutches, her co-workers in her unit area would help her by picking up the batches and bringing them to her. (Pl. Depo., 58:10-16.)

Plaintiff testified that Ms. Roy did not advise Plaintiff that she should contact – or had the option to contact – anyone else regarding her request for accommodation. (Pl. Depo., 60:13-18.) Plaintiff also testified that at some point Ms. Roy gave her a telephone "number to call." (Pl. Depo., 79:10-19.) Plaintiff was routed to several different telephone numbers, one after another, and she "still never got an answer." So, Plaintiff said to herself "forget it, this is insane" and "gave up." (Pl. Depo., 79:19-23.) Plaintiff testified that prior to speaking with her attorney in July of 2012, she was unaware of what the EEO was and was unaware there was an EEO office on the Butler Campus. (Pl. Depo., 87:15-88:15.) Plaintiff also testified that at some point in 2012 she contacted a union representative to request help in getting accommodations. In addition to referring her to the IRS special accommodations unit, the representative told her "the government is very good about providing help for you if you have an ongoing or long-term health issue." (Pl. Depo., 82:25-85:12.)

5

B.     **Procedural Background**

Plaintiff alleges she first became aware of the requirement to file a complaint with an EEO counselor in a meeting with her attorney in July of 2012. (Pl. Decl., p. 1.) After learning of the requirement, Plaintiff contacted an EEO counselor on August 21, 2012, and started the complaint process, "but for disputed reasons did not complete the process." (JSUF, p. 2.) Plaintiff brought the instant action in federal court on April 9, 2013. (*See generally* Docket.)

Defendant filed a motion for summary judgment on December 21, 2015, on the issue of whether Plaintiff had exhausted her administrative remedies before filing a claim in federal court. (Doc. 43.) Plaintiff filed an opposition (Doc. 44), Defendant filed a reply (Doc. 45), and the matter was taken under submission without oral argument.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id.* at 984. In contrast, if the nonmoving

party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson,* 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

### IV.   RELEVANT LAW

Under federal regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), federal employees complaining of discrimination by a governmental agency "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter," 29 C.F.R. § 1614.105(a), and they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1)[4]. Compliance with this regulation is "a statutory precondition to suit."

---

[4] Although the EEOC promulgated these regulations to implement the Americans with Disabilities Act, the standards used to determine whether an employer has discriminated under the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act. 29 U.S.C. §§ 791(f), 794(d).

*Vinieratos v. U.S., Dep't of Air Force Through Aldridge*, 939 F.2d 762, 768 n.5 (9th Cir.1991). However, the 45-day deadline constitutes an administrative "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (referring generally to the limitations period filing requirement under Title VII); *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir.), *cert. denied*, 506 U.S. 868 (1992). *See also Irwin v. Veterans Admin.*, 498 U.S. 89, 95-96 (1990) (holding that the rule of equitable tolling applies to suits against the Government in the same way it is applicable to suits against private defendants). This doctrine has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period. *See Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.), *cert. denied*, 484 U.S. 986 (1987); *Cooper v. Bell*, 628 F.2d 1208, 1212 (9th Cir. 1980); 29 C.F.R. § 1614.105(a)(2) (stating that the complainant will not be required to comply with filing period if he can show "that he . . . was not notified of the time limits and was not otherwise aware of them").

The equitable tolling doctrine is applied sparingly: for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate. *Irwin*, 498 U.S. at 94-95. Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights." *Id.* at 96 (citing *Baldwin Cty. Welcome Center v. Brown*, 466 U.S. 147, 151 (1984)). "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Id.*

## V.   DISCUSSION

Defendant contends that Plaintiff failed to contact an Equal Opportunity Counselor ("EEO") within 45 days of the alleged acts of the complaint, and that this "failure to exhaust administrative remedies is fatal to her claims[.]" (Doc. 43-1, p. 1.) Plaintiff does not contest that compliance with the regulation is a precondition to suit. (*See* Doc. 44.) Plaintiff also does not contest that she failed to contact an EEO counselor until August 21, 2012, a year and a half after her requests for accommodation were allegedly denied. (*See* Doc. 44.) Instead, Plaintiff contends

she should qualify for equitable tolling of this 45-day period. (Doc. 44.) Plaintiff first asserts that her training and employee handbook failed to apprise her of the 45-day period, and she was therefore unaware of any time limits on her ability to file a claim until she spoke with her attorney in July of 2012. (Doc., 44, p. 3.) Plaintiff alternatively argues that she believed her injury to be temporary and therefore she did not file an EEOC complaint until after she learned her injury was permanent in February of 2014. (*See* Doc. 44, pp. 3-5.) Defendant responds that "Plaintiff cannot have it both ways, claiming both that she had a disability when she made requests for accommodation in 2011, giving rise to her claim for damages under the Rehabilitation Act, *and* that her requests involved only short-term issues that would not put [P]laintiff on notice that she must contact an EEO counselor in order to protect her rights." (Doc. 45, p. 3 (italics in original).)

Here, Plaintiff's claim arises from three allegedly improper denials of her reasonable requests for accommodation: (1) a request for the use of a wheelchair kept on the premises to more easily allow her to navigate the workspace; (2) a request for a work space where she could elevate her leg; and (3) a request for assistance in retrieving batches of paperwork necessary to complete her job duties. (Am. Compl., ¶¶ 21-28.) Plaintiff made and was denied all three requests on April 30, 2011,[5] the day she first returned to work after injuring her right ankle. (Pl. Depo., 50:19-51:9; 56:2-14; 59:3-10; 59:19-60:12.) Plaintiff was therefore required to contact an EEO counselor by no later than June 14, 2011, 45 days after her requests for accommodation were allegedly improperly denied. *See* 29 C.F.R. §§ 1614.105(a), 1614.106(b). It is undisputed that Plaintiff did not contact an EEO counselor until August 21, 2012 – nearly a year and a half after making her requests on April 30, 2011 – to start the complaint process for these three allegedly improper denials of her requests for accommodation. (JSUF, p. 2.)

Plaintiff contends she should qualify for equitable tolling of the 45-day deadline to contact an EEO counselor because she was never sufficiently apprised of the 45-day period during her training and lacked actual or constructive notice that the deadline existed. (Doc. 44, p. 3.)

---

[5] The Court notes that in the Amended Complaint, Plaintiff alleges that these requests were made on May 12 and June 16, 2011. (Am. Compl., ¶¶ 20-28.) However, during her sworn deposition, Plaintiff testified that she made all three requests on April 30, 2011, the day after she injured her right ankle. No other evidence was submitted to the Court to clarify which dates are actually correct, and the Court will therefore accept the date identified by Plaintiff in her sworn deposition testimony as the actual date of her requests.

Contrary to Plaintiff's contention that she "did not learn of the need to file a complaint with the EEO office until after meeting with her attorney" (Doc. 44, p. 2), the evidence before the Court demonstrates that Plaintiff had actual notice of the 45-day deadline in April of 2010.

It is undisputed that on April 1, 2010, Plaintiff completed Briefing 17900 (Rev. 9/10A), titled the "No FEAR Act Briefing." (JSUF, p. 1.) During that briefing, Plaintiff was advised that "Federal agencies must provide reasonable accommodations to qualified persons with disabilities," and informed that "[t]o be considered as having a disability for purposes of employment discrimination a person must have a physical or mental impairment that substantially limits a major life activity." (de Wolfe Decl., Exh. A, pp. 10; 13) Though an "impairment" that substantially limits a major life activity was not defined, illustrative examples of "major life activities" were provided, including "breathing," "walking," "seeing," "hearing," and "performing manual tasks." (de Wolfe Decl., Exh. A., p. 10.) Plaintiff was also advised that "[a] temporary or short-term illness is not a disability[.]" (de Wolfe Decl., Exh. A., p. 10.) Finally, the briefing explained that "there are <u>specific steps</u> to follow and certain time restrictions. What is critical is that you must contact an EEO counselor within 45 days of the allegedly discriminatory event, or in the case of a personnel action within 45 calendar days of the effective date of the action, if you wish to pursue a complaint." (de Wolfe Decl., Exh. A, p. 16 (emphasis in original.) Plaintiff's contention that she lacked notice of the existence of the 45-day deadline is therefore without merit. (*See* JSUF, p. 1; de Wolfe Decl., Exh. A, p. 16.)

The 45-day period begins to run "'when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights.'" *Pesek v. Gates*, 247 F. App'x 62, 63-64 (9th Cir. 2007) (quoting *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985)). Here, the 45-day period began to run on April 30, 2011, the day Plaintiff made three requests for accommodation which were allegedly denied. At that time, Plaintiff was in possession of facts that would have been apparent to a reasonably prudent person supporting a charge of discrimination. The training in April 2010 informed Plaintiff that an injury limiting her ability to walk would be considered a disability. The training indisputably informed Plaintiff that a disability – permanent, temporary, severe,

nonsevere, mental, physical, or any combination thereof – is any impairment that "substantially limits a major life activity." (de Wolfe Decl., Exh. A, p. 10.) A major life activity was defined to include "walking." (de Wolfe Decl., Exh. A, p. 10.) Plaintiff's injury to her right ankle on April 29, 2011, limited her ability to walk. (*See* Am. Compl.) A reasonable plaintiff would have believed that an injury limiting her ability to walk would be a disability of the kind covered in the briefing, and that she *may* have had a cause of action due to Defendant's alleged failure to accommodate her disability. *See Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176, 1194-96 (9th Cir. 2001) (en banc); *Thelen v Marc's Big Boy Corp.*, 64 F.3d 264, 268 (7th Cir. 1995).

Even if the circumstances triggering the 45-day limitations period were clearly articulated in the training Plaintiff attended and the 45-day period began to run on April 30, 2011, Plaintiff contends the deadline should be equitably tolled because she "had no possible way to file a claim" given that the training also informed her that "[a] temporary or short-term illness is not a disability[.]" (Doc. 44, p. 3.) Plaintiff believed her ankle injury was temporary until February 6, 2014 – nearly three years after she initially injured her ankle and requested the three accommodations which form the basis of her complaint. (Doc. 44, p. 3.) Plaintiff argues that because the training specifically excluded "temporary or short-term illness[es]," she "could not reasonably conclude that her injury fell under the requirements of the training as from her knowledge it was not a permanent injury." (Doc. 44, p. 3 (citing *Summers v. Altarum Institute, Corp.*, *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 332 (4th Cir. 2014))[6].)

---

[6] Plaintiff quotes *Summers* to support her contention that her belief that her ankle injury was "temporary" equitably tolled the 45-day deadline until she learned it was "permanent[ly] damage[d]." (*See* Doc. 44, p. 3.) Plaintiff contends that, under *Summers*, "6 months is a good starting point for determining if an injury is temporary." (Doc. 44, p. 4.) Therefore, Plaintiff argues, "on one hand, if [the impairment] is temporary, which is less than 6 months, you cannot file a claim, and on the other hand you must file a claim within 45 [days]." (Doc. 44, p. 4.) As a result, Plaintiff opines, a claimant is put "in the impossible position of filing a claim on an occurrence which according to their training does not qualify for a claim." (Doc. 44, p. 4.)

In *Summers*, however, the Fourth Circuit made no finding whatsoever that an impairment must endure for six months to be considered disabling. In that case, the defendant argued that the plaintiff's ankle, tendon, and knee injuries did not qualify as a disability under the EEOC's regulations. 740 F.3d at 332. The defendant argued that any impairments imposed by the plaintiff's injuries were only temporary, and therefore not covered by the statute. *Id.*.

The *Summers* court rejected the defendant's attempt to distinguish between impairments temporarily imposed by "injuries" and impairments temporarily imposed by "permanent conditions":

However, the April 2010 training does not identify any requirement that an impairment be "permanent" to be considered disabling – the training mirrors the language of the Rehabilitation Act in emphasizing that an impairment must have a "substantially limit[ing]" effect on a "major life activity." (*Compare* de Wolfe Decl., Exh. A, p. 10 (defining "disability" as a "physical or mental impairment that substantially limits a major life activity"), *with* 29 C.F.R. § 1630.2(g)(1) (defining "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual").) While temporary, non-chronic impairments may not arise to level of a "disability" under the Rehabilitation Act, *see* 29 C.F.R. § 1630.2(g)(1) (noting that the Act does not cover "transitory and minor" impairments), there is <u>no</u> durational requirement to establish that an impairment substantially limits a major life activity and therefore constitutes a disability under the Act, *see id.* at § 1630.2(j)(ix) ("[t]he effects of an impairment lasting or expected to last fewer than six months [and therefore considered 'transitory' under § (g)(1)] can be substantially limiting within the meaning of this section"), nor did the April 2010 training misinform Plaintiff of any durational requirement before an impairment could be considered a qualifying disability.

//

---

> But, in fact, **the EEOC regulations provide no basis for distinguishing between temporary impairments caused by injuries, on one hand, and temporary impairments caused by permanent conditions, on the other**. The regulations state only that the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" - they say nothing about the cause of the impairment. 29 C.F.R. § 1630.2(j)(1)(ix).
>
> Nor do the regulations suggest that an "injury" cannot be an "impairment." Rather, the EEOC defines an impairment broadly to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems," including the "musculoskeletal" system. *Id.* § 1630.2(h)(1). **This expansive definition surely includes broken bones and torn tendons**. And the EEOC elsewhere uses the terms "injury" and "impairment" interchangeably. *See id.* § 1630.2(j)(5) n. 3 (app.); *id.* § 1630.15(f) (app.).
>
> Under the [Americans with Disabilities Act] and its implementing regulations, **an impairment is not categorically excluded from being a disability simply because it is temporary.** The impairment alleged by [plaintiff] falls comfortably within the amended Act's expanded definition of disability.

*Summers*, 740 F.3d at 332-33 (emphases added).

The Court is unpersuaded by Plaintiff's contention that *Summers* holds that an impairment lasting less than six months, regardless of severity or impact upon major life activities, is "temporary" and therefore not a qualifying disability under the Rehabilitation Act. There is no dissonance, as Plaintiff suggests, between the 45-day period and the *Summers* court's observation that under the regulations an impairment lasting "fewer than six months can be substantially limiting."

12

The Court declines to engage in an exhaustive analysis over whether an ankle injury that is expected to eventually heal is "temporary" or "permanent" – to do so would contravene Congress' intent in defining a disability under the Rehabilitation Act as an impairment "substantially limiting" a major life activity. *See* 29 C.F.R. 1614.2(j)(1)(i) (explicitly instructing that the term "substantially limits" "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the [Americans with Disabilities Act]. . . . [and] is not meant to be a demanding standard"). Under Plaintiff's argument, it is unclear what type of injuries would be effectively "permanent" short of death or dismemberment – Plaintiff's ankle injury substantially impaired her ability to walk *for over three years* until she "learned" for the first time in February 2014 that "there had been any actual permanent damage." (Doc. 44, p. 3.) A reasonable plaintiff would not consider an ankle injury requiring a "walking cast" and crutches and lasting for weeks – much less *years* – to be a "temporary or short-term illness." *Santa Maria*, 202 F.3d at 1178. ("Equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty"). Plaintiff's contention that her mistaken belief that her injury was temporary warrants equitable tolling of the 45-day limitations period is without merit.

Finally, equitable tolling may be applied in situations "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96 (footnotes omitted). Here, though Plaintiff testified that her managers lacked knowledge of procedures on accommodating a disability (*see, e.g.,* Pl. Depo., 57:15-19; 58:16-24; 75:6-18), Plaintiff has presented no evidence that she was somehow misled or forced into allowing the deadline to pass due to some misconduct or misrepresentation by Defendant. *See O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2003) (wrongful conduct on the part of the defendant, or extraordinary circumstances beyond the plaintiff's control, must have made it impossible to file a claim within the time limits to warrant equitable tolling). That Plaintiff failed to read or understand the terms of the training briefing is not a product of any misconduct on the part of Defendant.

As there is no genuine issue of material fact as to when a person in Plaintiff's circumstances would have known of a possible claim and the requirement to contact an EEO

counselor, and no question that Plaintiff failed to do so within 45 days of the allegedly improper denials of her requests for accommodation, summary judgment is proper.

## VI.  CONCLUSION

According, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (Doc. 43) is GRANTED;
2. The Clerk of Court is DIRECTED to enter judgment for Defendant; and
3. This case shall be CLOSED.

IT IS SO ORDERED.

Dated:  **January 26, 2016**                              **/s/ Sheila K. Oberto**
                                                          UNITED STATES MAGISTRATE JUDGE